COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-06-00266-CV |
| | § | |
| | § | Appeal from the |
| IN THE MATTER OF A.T.M., | § | |
| A Juvenile, | | 65th Judicial District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC# 02,01922) |
| | § | |

**O P I N I O N**

This is an appeal from a disposition modification committing A.T.M. to the Texas Youth Commission (TYC). In one issue, A.T.M. contends the trial court abused its discretion when it committed him to TYC when other community based programs were available. We affirm.

On August 18, 2005, A.T.M. was adjudicated of engaging in the delinquent conduct of robbery, a felony. Appellant admitted to the charges brought against him. He robbed a man leaving a check-cashing store.

On September 15, 2005, he was placed on probation under the courtesy supervision program in Cumberland County, North Carolina. While he was on probation, his mother, Mrs. Mahan, reported to both his probation officer in El Paso, Officer Legarretta, and in North Carolina, Officer Pitts, that he was not complying with the conditions of his probation. Officer Legarretta testified to these reports at the disposition hearing. Mrs. Mahan stated that he would leave the home and not return until late that night or the early hours of the next day. Also, Mrs. Mahan reported that he was taking money, electronics, and jewelry from the home without

her permission.

Appellant had trouble in school in North Carolina, as well. He received discipline referrals for aggressive/disruptive behavior, disorderly conduct, and insubordination. He was involved in a fight for which he received in-school suspension, and was subsequently expelled for refusing to attend the in-school suspension. After expulsion, the juvenile refused to go with his mother to enroll in an alternative school. He also failed to attend an appointment his mother made for counseling with the military through psychiatric services. Mrs. Mahan said she did not know what else to do with him. On March 29, 2006, a Directive to Apprehend was issued to bring the juvenile in front of the juvenile court. Appellant turned himself in during August. On September 7, 2006, the court sustained the motion to modify disposition finding that Appellant had violated his probation when he was expelled from school.

At the disposition hearing, Mrs. Mahan testified, and recanted much of her reported complaints. The items she believed Appellant had taken were all accounted for after having spoken with her husband, and being told that he had sold some of the items before deploying to Iraq and the rest was in the back of the closet. She believed that Appellant was expelled because of his prior felony conviction. She eventually did get Appellant enrolled in an alternative school. Once A.T.M. started working, he began to help her out. He was doing painting and home repair work with a Mr. Roberts up until the time he turned himself in. He was also doing community service work with Mr. Roberts on Saturdays. Her husband is back from Iraq, and has said he will take full control over Appellant since she has been unable to.

A.T.M. received a psychological evaluation from Dr. Basurto. Dr. Basurto recommended he be placed in a behavior modification program. The Juvenile Probation Department

-2-

recommended that he be committed to the Texas Youth Commission. The behavior modification program in El Paso, Challenge Boot Camp, was not recommended in this instance due to Appellant's age. He would have had only three months to participate in the program before turning eighteen. Commitment to the TYC was the only option that was explored by the department. The Juvenile Court Referee disagreed with Appellant that he had changed his ways, and ordered Appellant committed to TYC.

The Court found that the juvenile was in need of rehabilitation, the protection of the public and the juvenile required a disposition be made, and was in his best interest to be placed outside of his home because he has no parent who can supervise, control, or discipline him, nor does he lend himself to suitable supervision, control, and discipline, and would be unable to meet the conditions of probation. The court also found that the following reasonable efforts had been made to prevent or eliminate the need for the juvenile to be removed from his home, and make it possible for him to return home. He had been previously placed on probation by the Court, been provided a psychological assessment by Dr. Basurto, and an assessment by Project Libertad. The reasons for the disposition were that the juvenile needed to be held accountable and responsible for his delinquent behavior. It was the court's opinion that he posed a risk to the safety and protection of the community, that there were no community-based intermediate sanction facilities available to adequately address the needs of the juvenile or adequately protect the needs of the community, and the gravity of the offense and the juvenile's prior record indicate he needs to be confined to a secured facility.

Appellant's sole issue on appeal is that the trial court abused its discretion by committing A.T.M. to the Texas Youth Commission when other community based programs were available.

-3-

In a juvenile case, the trial court possesses broad discretion to determine a suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct. *In the Matter of A.S.*, 954 S.W.2d 855, 861 (Tex.App--El Paso 1997, no pet.). A disposition based on a finding that the child engaged in delinquent conduct that violates a penal law of this state or the United States of the grade of felony may be modified to commit the child to the TYC if the trial court finds, by a preponderance of the evidence, that the child violated a reasonable and lawful order of the court. TEX.FAM.CODE ANN. § 54.05(f),(j)(Vernon Supp. 2007); *In re E.R.L.*, 109 S.W.3d 123, 127 (Tex.App.--El Paso 2003, no pet.), *citing In re L.R.*, 67 S.W.3d 332, 335 (Tex.App.--El Paso 2001, no pet.). The Family Code provides that if the juvenile court places the child on probation outside the child's home or commits the child to the Texas Youth Commission, the court:

(1) shall include in the court's order a determination that:

    (A) it is in the child's best interests to be placed outside the child's home;

    (B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

    (C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation . . . .

TEX.FAM.CODE ANN. § 54.05(m)(1).

We do not disturb the juvenile court's findings absent an abuse of discretion. *A.S.*, 954 S.W.2d at 861. The juvenile court does not abuse its discretion merely because it decides a matter differently than the appellate court would have in a similar situation. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex.App.--Fort Worth 2002, no pet.).

We apply a two-pronged analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *In re M.A.C.*, 999 S.W.2d 442, 446 (Tex.App.--El Paso 1999, no pet.). Traditional sufficiency of the evidence review helps answer the first question. *Id*. For the second prong, we look to whether the trial court acted without reference to any guiding rules or principles. *Id*., *citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). There is no abuse of discretion when some evidence of substantive and procedural character supports the trial's court decision. *Sotelo v. Gonzales*, 170 S.W.3d 783, 788 (Tex.App.--El Paso 2005, no pet.), *citing Lide v. Lide*, 116 S.W.3d 147, 152 (Tex.App.--El Paso 2003, no pet.).

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth circumstances. *See id*. at 810-11. In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id*. at 822. Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish so long as more than one inference is possible. *City of Keller*, 168 S.W.3d at 821. But if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id*. We are also mindful that jurors are the sole judges of the credibility of the

-5-

witnesses and the weight to give their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the jury to resolve such conflicts. *Id*. at 820. In every circumstance in which reasonable jurors could resolve conflicting evidence either way, the reviewing court must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id*. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id*. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

Review of the factual sufficiency requires an examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re E.R.L.*, 109 S.W.3d at 129, *citing In re L.R.*, 67 S.W.3d at 339. The evidence must be so weak or the contrary evidence so overwhelming that the findings should be set aside and a new trial ordered. *In re E.R.L.*, 109 S.W.3d at 129, *citing In re C.J.H.*, 79 S.W.3d at 698. It is for the fact finder to determine the weight to be given to the testimony and resolve any conflicts in the evidence. *Sotelo*, 170 S.W.3d at 787.

Appellant contends that the juvenile court abused its discretion by committing him to TYC when other community-based alternatives were available. Appellant argues the findings that the community needed to be protected from the juvenile, that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet conditions of probation, and no community-based intermediate sanction was available to

-6-

adequately address the needs of the juvenile or to adequately protect the needs of the community were not supported by the evidence.

Appellant admitted to the allegations brought by the State, and was adjudicated of having engaged in the delinquent conduct of robbery. He was placed on supervised probation under the supervision of the Cumberland County Juvenile Probation Department. A.T.M.'s probation officer, Officer Legarretta testified his mother reported numerous problems with Appellant. He would leave home not returning until late at night or the early hours of the morning, and she would not know his whereabouts. Appellant had been suspended from school for fighting. He received discipline referrals for aggressive, disruptive behavior, insubordination, and disorderly conduct. He was expelled from school for refusing to attend in-school suspension. Appellant refused to go with his mother to enroll in an alternative school, and to get counseling through the military's psychiatric services. He was taking property from home without his mother's permission, and was believed to be pawning the items for money. His mother stated several times that she does not know what else to do with him. Officer Legarretta stated that Appellant does not lend himself to supervision, his parents are not able to provide the proper control and supervision, and he would not receive the quality of care and level of support needed to meet the conditions of probation. Officer Legarretta did not recommend the case for the Challenge Boot Camp due to Appellant's age.

Mrs. Mahan testified that the items she had reported being stolen by Appellant had either been sold by her husband or placed in the back of a closet without her knowledge. She also stated that Appellant had been expelled mainly due to his felony adjudication. She eventually did get him to enroll in an alternative school. The reason she could not deal with him was because of

a chronic medical condition, which has caused her to be heavily medicated, but her husband is back from Iraq and has said he will take full control of Appellant. However, Appellant has to this point not been receptive to the supervision of his mother or his probation officers. Appellant began working and helped his mother out some. He also did volunteer work with his employer on Saturdays. A.T.M. spoke to the Juvenile Court Referee stating that he had changed his life around. Dr. Basurto, who performed a psychiatric evaluation of Appellant, recommended he be placed in a behavior modification program. It is the fact finder who determines how to weigh the testimony, and resolves any conflicts in the evidence. *Sotelo*, 170 S.W.3d at 787. The court did not believe Appellant had changed. The contrary evidence is neither so overwhelming, nor is the supporting evidence so weak that require us to set aside the finds and order a new trial. The evidence is factually and legally sufficient to support the findings of the juvenile court.

The second step of the analysis is to determine whether the juvenile court abused its discretion. Appellant argues that it abused its discretion by committing him to TYC when other community-based alternatives were available. However, a court is not required to consider alternative dispositions in a modification hearing. *See* TEX.FAM.CODE ANN. § 54.05 (f). A disposition based on the finding that a juvenile has violated a law of this state of the grade of felony may be modified to commit the child to the TYC if the court, after a hearing to modify disposition, finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court. *Id.* Appellant was initially put on probation, which he then violated by being expelled from school. Appellant argues that there are community-based services available through the military or the Challenge Boot Camp in which he could have participated. However, Appellant previously refused to go to counseling, which Mrs. Mahan had set up through the

military's psychiatric services. He was not recommended for Challenge because it was to close to his eighteenth birthday, which would limit his time in the program. The Juvenile Court Referee did not place him back on supervised probation since he did not listen to anyone the last time. Appellant also argued that he is not the serious type of offender that the Legislature intended to be sent to TYC. However, Appellant was adjudicated of robbery, a second-degree felony, to which he admitted, that requires committing theft and knowingly threatening and placing the victim in fear of imminent bodily injury or death. *See* TEX.PENAL CODE ANN. § 29.02 (Vernon 2003). The reason for his probation violation, expulsion from school, may not seem that serious, but it was due to his refusal to attend in-school suspension that resulted from a fight at school. This shows the violent tendencies of Appellant, and his need for rehabilitation.

There is sufficient substantive evidence to support the court's findings, and the order is in accordance with the guidelines set by the Family Code. Thus, we find the juvenile court did not act arbitrarily or without reference to guiding rules and principles, and there was no abuse of discretion in committing Appellant to TYC.

Having overruled Appellant's sole issue, we affirm Appellant's commitment to the Texas Youth Commission.

May 8, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.